Filed 10/29/15  Post Apple LLC v. Acrew Management CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| POST APPLE LLC et al.,<br><br>　　　Plaintiffs, Cross-defendants and<br>　　　Appellants,<br><br>v.<br><br>ACREW MANAGEMENT LLC et al.,<br><br>　　　Defendants, Cross-complainants<br>　　　and Appellants. | A142859 & A143832<br><br>(Alameda County<br>Super. Ct. No. RG12621598) |

These are two consolidated appeals following a court trial of a slander of title action, the one cause of action remaining after a court-supervised settlement conference resolved all other issues between and among the interested parties.  The winner in the slander of title action was Acrew Management, LLC (Acrew).  The losers were Post Apple, LLC (Post Apple) and Abraham Farag (Farag).  Post Apple and Farag (sometimes when referred to collectively, plaintiffs) appeal from the judgment finding them liable for slander of title.

Farag, a sophisticated real estate investor, was a significant player here: a 49 percent owner of Post Apple; a principal in two other involved entities; and the person who caused to be recorded, and then testified falsely about, several documents that caused the slander of title—documents, it turned out, that had been post dated.

Following five days of trial, the court found for Acrew and against Post Apple and Farag, in a detailed, comprehensive statement of decision, a statement that, among other

1

things, recited Farag's various misdeeds. Despite all that, plaintiffs filed an opening brief whose "Factual Summary" is all of one page, a bland recitation that ignores all of Farag's machinations—and his perjury. That brief makes three arguments: (1) slander of title was not proper; (2) Farag was not personally liable; and (3) the $92,054 damages awarded were not supported. We reject the arguments and affirm.

Following the judgment in its favor, Acrew moved for attorney fees, based on an attorney fee provision in a document to which neither Acrew nor its adversaries was a party. The trial court denied Acrew fees, and it appeals from the order on that denial. We affirm that order as well.

## BACKGROUND
### The Property, the Pleadings, and the Settlement

This appeal involves property located at 2390 Sacramento Street, Berkeley (the property), and arises out of a complaint and cross-complaint filed in 2012, in Alameda County Superior Court, Action No. RG 12621598 (the action). The action was not the first action involving the property or the parties, however, which was an unlawful detainer action filed in 2011, which action will be discussed in detail below. Suffice to say here that it was not a run-of-the-mill unlawful detainer case. Rather, it involved issues of title, numerous pleadings, extensive discovery and discovery-related motions, several court appearances and conferences, all culminated by a defense motion for summary judgment/adjudication supported by a declaration from Farag, whose testimony in that declaration caused the landlord to dismiss the case—a declaration, it would develop, that was false.

The unlawful detainer dismissed, the action followed.

On March 16, 2012 Post Apple filed the action. It alleged one count, for partition, and named two defendants: Acrew, alleged to own 75.8622 percent of the property; and A and R Laundries, LLC (A and R), alleged to be the sole tenant of the property.

Acrew answered and also filed a verified cross-complaint naming five cross-defendants: Post Apple; A and R; Develop R2 LLC; Kenneth Mariani; and Farag. The cross-complaint alleged 10 causes of action, styled as follows: (1) declaratory

2

relief; (2) breach of fiduciary duty; (3) partition; (4) ouster; (5) ejectment; (6) quiet title; (7) accounting; (8) slander of title; (9) cancellation of instruments; and (10) violation of California Business and Professions Code section 17200.

Post Apple and Farag filed separate verified answers to the cross-complaint.[1] The verification to Post Apple's answer was by Farag, "a manager of Post Apple."

The action was assigned for all purposes to the Honorable Ioana Petrou. The action generated a seven-page register of actions, the particulars of which are not in the record before us. What we do know is that in June 2013 the parties attended a court-supervised settlement conference, the upshot of which was a "settlement on the record," memorialized in a two-page settlement statement. There, the parties agreed to settle all claims between and among them except Acrew's slander of title claim against Post Apple and Farag, as to which the settlement statement provided as follows: "The issue of Abraham Farag's and Plaintiff Post Apple LLC's liability for any damages for slander of title, including without limitation, attorneys' fees and punitive damages, shall be submitted to Judge Petrou for a court trial. Each party waives his/her/its right to a jury trial on this issue."

Farag signed the signature page on the settlement statement in three separate places, on behalf of three separate entities: (1) "Post Apple LLC, A California limited liability corporation," signed as Managing Member; (2) "A and R Laundries LLC, A California limited liability corporation," signed as Authorized Agent; and (3) "Develop R2 LLC, A California limited liability corporation," signed as Managing Member.

## The Trial

The slander of title claim proceeded to a five-day court trial before Judge Petrou, beginning on September 30, 2013, and concluding on October 7. There was no court reporter. The parties filed proposed statements of decision, to which the other side filed objections. The matter was submitted on November 7. On December 20 Judge Petrou

---

[1]The record does not reveal the pleadings, if any, filed on behalf of A and R, Develop R2 LLC, or Mariani. However, as indicated below, they remained involved, at least as interested parties.

filed her intended tentative ruling and proposed statement of decision, to which Post Apple and Farag objected yet again.

On January 28, 2014, Judge Petrou filed her statement of decision finding for Acrew and against Post Apple and Farag. Judge Petrou's statement began with the preliminary observation that she "did not find Mr. Farag to be credible," and from there went on with a comprehensive six-page analysis of "facts" and "findings," followed by a "Judgment" and an indication of damages to be later ascertained.

Since there is no reporter's transcript, we quote extensively from Judge Petrou's well-written Statement to set forth the pertinent facts:

"**A. GENERAL BACKGROUND**

"This case presents an issue regarding the real property located at 2930 Sacramento Street in Berkeley, California (hereinafter 'the Property').

"In 2007, the Property was owned by Daniel Dumas and Annabelle Constantin, who operated a Laundromat on the premises (Sparkle Clean Wash and Dry). In 2007, Dumas executed a $725,000 note in favor of Geneva Real Estate Investments, Inc. The note was funded by a group of investors, including Ken Marinai, who had a 24.1378% interest in the note. In 2009, Abraham Farag and an associate founded A and R Laundries LLC to purchase the Laundromat business operating on the Property. They did so, and leased the property from Mr. Dumas as of January 1, 2010. Dumas began to default, failing to pay property taxes and the payments to Geneva. The note was taken over by Medallion Servicing, LLC in late 2010 or early 2011. Mr. Farag on behalf of Post Apple made several unsuccessful attempts to purchase the note.

"A foreclosure sale was scheduled for April 14, 2011, and then continued to April 21, 2011. A few days before the sale, Farag on behalf of Post Apple purchased Marinai's interest in the Dumas note. Medallion purchased the Property at the April 21 foreclosure sale.

"On May 5, 2011, Farag executed a Lease Non Subordination Agreement (hereinafter 'LSNDA') between and on behalf of both Post Apple and A&R. The LSNDA and a Lease Memorandum, both dated April 21, 2011, were recorded on

4

May 6, 2011. The Trustee's Deed Upon Sale was recorded June 20, 2011. The remaining investors to the Medallion purchase of the Property granted their 75+% interest to Acrew LLC. That Grant Deed was recorded June 29, 2011.

"Acrew filed an unlawful detainer action against A&R, naming Post Apple as an involuntary plaintiff. Post Apple and A&R moved for summary judgment. On February 28, 2012, Acrew filed a motion for leave to convert the unlawful detainer to an unlimited civil case for damages, which Post Apple and A and R Laundries opposed. The motion was taken under submission pending the Motions for Summary Judgment. Acrew dismissed the unlawful detainer action without prejudice thereafter, claiming they were forced to do so by Farag's alleged false testimony as to the LSDNA and Lease Memorandum preceding the trustee sale.

"Post Apple then filed this complaint for partition. Acrew also filed a cross-complaint against Farag, Post Apple, A and R Laundries, Develop R2, and Marinai, seeking partition, quiet title, cancellation of instruments, accounting, and damages for ouster, ejectment, breach of fiduciary duty, slander of title, and violations of Business and Professions Code 17200.

"After settlement conferences with the Honorable Evelio Grillo, the parties resolved all of their disputes other than Acrew's claim for slander of title against Post Apple and Farag, which they agreed would go to court trial.

"**B.    FINDINGS**

"The Court considered the one cause of action for slander of title that is being asserted by Acrew Management nominally holding the interests of Barton A. Brown, James R. Christensen, Paul Danzig, Gilbert Gregory, Winton E. Mather, IRA/First Regional Bank, Ofra Weiss, Gary L. Willer, Phoenix 1 Fund, and Kenneth P. Marinai under a note and a deed of trust. These investors, together with Kenneth P. Marinai (collectively, 'initial investors') were owners of the deed of trust (Ex. 1) executed by Daniel Dumas that pledged the Property to secure payment of a note (Ex. 2) in the amount of $725,000.

"Farag is an individual who owned 49% of A and R Laundries.  In December 2009, A and R Laundries became a tenant at the Property (Ex. 3).  Farag, in connection with his efforts to purchase the business, sought an agreement with all of the initial investors to subordinate the deed of trust to the Dumas—A and R Laundries lease to create non-disturbance rights.

"Farag knew that the mortgage payments due from Dumas on the first trust deed were larger than the payments received under the lease.  Therefore there was a significant risk of default.  Therefore Farag wanted the benefits of a subordination non-disturbance agreement (LSNDA).

"Farag was told by James Kroetch, acting on behalf of the initial investors, that the initial investors were not willing to give a  non-disturbance agreement.  The initial investors wanted the property to be unburdened by the lease.  This would give the initial investors most flexibility should they become owners by foreclosure.

"On April 18, 2011, Farag negotiated and completed the acquisition by Post Apple of an interest in the note by buying 24% from Ken Marinai.  On April 21, 2011 the deed of trust went through a foreclosure sale.  All of the beneficiaries became owners together at that time.  The actual recordation of the deed did not occur until June 20, 2011, but, the legal effect of the trustees sale is to vest title to the foreclosing beneficiaries at the time the sale is conducted.

"At the time of the sale, Farag was present and bid $600,000.  Farag did not at that time indicate any assertion that his company, A and R Laundries, had rights as a tenant that were enhanced by and [*sic*] LSNDA or other agreements.

"On May 5 Farag signed the LSNDA (Ex. 7) and also a memo of lease (Ex. 8).  Both of these documents were acknowledged before a notary on May 5.  However, the LSNDA and Lease Memorandum were purported to be executed on April 20 and 21, 2011, i.e. prior to the foreclosure sale.

"The documents created the appearance of rights in A and R Laundries, the tenant, to stay in the property despite the foreclosure.  In fact, these rights did not exist.

6

"The lease rights in fact were subordinate to the rights of the foreclosing owners and the lease was in fact extinguished by the foreclosure. However, because of the recorded documents it appeared that the lessee's rights were greater than they in fact were. This created the appearance that all the interests in the property were burdened by the lease and option.

"If it was apparent that the lease had been extinguished by sale (as it had been) then there would have been a clear and known right to evict a tenant and the property owners could have proceeded to sell or lease the property at their choosing.

"In connection with defending his company, A and R Laundries, from eviction Farag swore under oath (in declarations) that the recorded documents were in fact dated prior to the sale (see Ex. 11). He swore to false facts because they created a different legal effect. See in Ex. 15 Post Apple's unlawful detainer trial brief recitation on page 5, line 2 ('in the instant case Post Apple **while it was a lender** validly executed a Memorandum of Lease and an LSNDA which contains a subordination, a non-disturbance agreement and an attornment clause whereby the Lessee upon foreclosure, subject to the nondisturbance provisions shall attorn to such new owner and the Lease automatically becomes a lease between the Lessee and the new owner.')

"Effectively these recorded documents, if truthful, allowed significant potential defenses to the unlawful detainer and increased the cost of litigation increased [*sic*]. The unlawful detainer litigation was replaced with this action, all of the claims which were designed to eliminate the false documents and their legal effect. However, the Court does not find that all of the claims were necessary to eliminate the false documents and their legal effect. Counsel are to focus on what litigation was required in their request for damages (*see* section D., below).

"**C.    JUDGMENT**

"On the cause of action of Slander of Title, the Court finds for Acrew and against both Post Apple and Abraham Farag. The Court notes that Mr. Farag took the actions and is personally liable for the slander of title he performed. The Court does not find for Acrew on its request for punitive damages as it has not, by clear and convincing

7

evidence, proven that Farag engaged in the relevant conduct with malice, oppression, or fraud.

"CACI 1730 Slander of Title sets forth the elements for proving slander of title and the Court finds that all of the elements have been met. Farag and Post Apple and A and R Laundries made a statement, *i.e.* recorded a Lease Memorandum and LSNDA (Ex. 7 and 8) both of which became a public record. Those statements were untrue. They purported to pre-date a foreclosure, which was false. The LSNDA purported to recite an option to purchase the property which was not a valid right. That option to purchase was purporting to bind all of the property owners including the seven original investors.

"Farag knew that these statements were false. He knew he was trying to acquire non-disturbance rights that he was not able to acquire with respect to the remaining nine original investors. Farag, because he was a sophisticated real estate broker, knew it would create the appearance of an option and would create the appearance of lease survival rights which would cause the need to clear title of this cloud.

"The Court notes that Guy Puccio, Post Apple and Farag's expert, testified that any damages to Acrew were the result of the conduct of others. However, Mr. Puccio also testified that the recording of the Lease Memorandum was a cloud on title and that the option to purchase clouded title for as long as it was in existence. This cloud on title had nothing to do with the action of any others and the cloud on title is what necessitated subsequent legal proceedings.

"In regards to the duration of the cloud on title, the duration of the option to purchase was unclear from the Lease Memorandum itself. In fact, Acrew as a nominee for the original seven investors did in fact suffer financial harm because they needed to incur legal fees to eliminate the purported rights created by these false documents. Farag, Post Apple and A and R Laundries conduct was a substantial factor in causing harm because they signed the documents and caused them to be recorded. Post Apple and Farag did not prove that there were clear offers to purchase that would have made Acrew Management whole.

8

"Further, financial harm was clearly demonstrated as plaintiff's attorney fees and costs necessary to clear title constitute actual harm or injury to the plaintiff proximately caused by the tort. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999, 1032 (2012).

"Farag and Post Apple have not met their burden of establishing that the recording of the LSNDA or the Lease Memorandum was privileged as those documents contain statements that are plainly false, and not simply legally inconsistent. Fundamentally, (1) Farag signed the LSNDA and Lease Memorandum on May 5, 2011, (2) on documents bearing an April 21, 2011 signature date, and (3) Farag and Post Apple relied on this false signature date's legal effect to defeat the unlawful detainer. Farag's trial testimony that he misremembered was devoid of any credibility.

"In regards to personal liability, Farag has taken the new position that he is not personally liable, citing generally in post-trial briefing to the principle that LLC members are not liable for any debt or judgment against an LLC solely by reason of being a member of the LLC. However, the '[Limited Liability Company Act] does not relieve a member from liability arising from . . . the member's tortious conduct' and in this case it is precisely Farag's own conduct that is at issue. *People v. Pacific Landmark, LLC,* (2005) 129 Cal.App.4th 1203, 1212. This issue was not previously raised though all parties were aware that Farag's own conduct was at issue. For example, Post Apple and Farag filed a successful Third Motion in Limine to preclude evidence of Farag as the alter ego of Post Apple or A and R Laundry or Develop R2 LLC.

"**D.    DAMAGES**

"A Plaintiff in asserting a slander of claim title may recover (1) the expense of legal proceedings necessary to remove the doubt cast by the disparagement, (2) financial loss resulting from the impairment of vendibility of the property, and (3) general damages for the time and inconvenience suffered by plaintiff in removing the doubt cast upon his property.

"Acrew does not seek damages based upon impairment of vendibility or for general damages. Instead, Acrew seeks fees and costs, which is appropriate since

9

'[w]here title was disparaged in a *recorded* instrument, attorney fees and costs necessary to clear title or remove the doubt cast on it by defendant's falsehood are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title.' *Sumner Hill Homeowners' Assn., Inc.*, 205 Cal.App.4th at 1031. *v. Rio Mesa Holdings, LLC*, [*sic*] 205 Cal.App.4th 999, 1031 (2012).

"Acrew's fact and expert witness James Kroetch testified that $247,467.62 in legal fees was required to clear title. For Post Apple and Farag, expert witness Andrew Wiegel testified that only 20.8 hours of the attorney billing was clearly tied to efforts to expunge the title issues and testified that an extraordinary amount of time was spent determining fundamental legal issues."

Judge Petrou went on to observe that she did not find either side's arguments to be compelling and requested further briefing on the issue of damages.

Following that further briefing, Judge Petrou issued another Tentative Ruling and Proposed Statement of Decision, to which plaintiffs filed objections. On July 1, 2014, Judge Petrou issued her Statement of Decision Regarding Damages, again a thorough, detailed analysis. This statement began with various findings, some of which repeated the history of the litigation described above. Judge Petrou then turned to the substance:

"**Attorney Rates**

"As a preliminary matter, the Court finds that the billing rates as set forth on page one of the Declaration of Jing Cherng in Support of Acrew's Request for Fees . . . are reasonable and notes that there has been no objection raised to any of these rates.

"**Impact of Settlement Agreement**

"The Court rejects Post Apple's argument that since there was a settlement agreement for all claims other than slander of title that Acrew cannot recover fees spent on any other causes of action. This is incorrect as the settlement agreement clearly excluded slander of title, including damages relating to same, and it is clear that the slander of title action is inextricably intertwined with other causes of action. As set forth within the settlement agreement, the 'issue of Abraham Farah's [*sic*] and Plaintiff Post Apple LLC's liability for any damages for slander of title, including without limitation,

10

attorneys' fees and punitive damages, shall be submitted to Judge Petrou for court trial.' Settlement at paragraph 3. The parties could have agreed that any attorney fees incurred after the date of execution of the settlement agreement would be ineligible for a potential award. Instead, they agreed that damages in the form of attorney fees could be pursued 'without limitation.'

"Post Apple's argument that awarding attorney's fees as damages post-settlement undermines the public policy encouraging settlements is inapposite as this settlement specifically carved out damages, including fees, relating to the slander of title cause of action.

"However, as more fully set forth below, the Court does find that damages in the form of fees other than to enforce the settlement agreement were cut off at the time the parties entered into the settlement agreement because at that point the parties agreed on the sale. While the settlement was not executed for a number of months, it was the settlement—not the trial regarding slander of title—that caused title to be cleared.

"**Mitigation of Damages**

"Post Apple complains that Acrew did not file a declaratory relief action. However, it is not the role of the Court to determine whether the litigation was the best, most effective litigation possible under the circumstances but rather to determine whether it was reasonable, fair and proper.

"**Attorney Fees Incurred During Unlawful Detainer Proceeding**

"Acrew elected to commence the litigation with an unlawful detainer action, which it voluntarily dismissed. As set forth in the Court's prior orders, the Lease Subordination and Nondisturbance Agreement (LSNDA) and the Lease Memorandum slandered titled [*sic*] to the property at issue and Post Apple and Farag used these documents as the basis for their affirmative defenses in the unlawful detainer action.

"While the Court cannot normally award fees to a party that voluntarily dismissed an action, Acrew has provided persuasive authority that Code of Civil Procedure section 1021 does not apply to compensatory damages in the form of attorneys' fee as an

11

award of fees *as* damages is distinguishable from an award of fees *as* fees, and only the latter is directly covered by section 1021.

"However, the Court declines to award the full amount requested for a number of reasons. First, a billing rate of $550/hour is not customary for an unlawful detainer action in Alameda County. Further, while this was a more complicated unlawful detainer action than typical, the amount of work done was truly extraordinary. In addition, Acrew's fee request inappropriately includes requests for vague entries such as 'attention to discovery responses' and for time spent in settlement discussions and 'communicate re settlement.' There was also significant work done in that action not related to quieting title and some duplication of work in the billings provided regarding the unlawful detainer action and the instant action.

"Having gone through the detailed billings as there was no task based billing summary, the Court finds that the application of a .6 multiplier, an award of $64,360, is a reasonable and appropriate fee.

"**Attorney Fees Incurred During Instant Action**

"The LSNDA and Lease Memorandum were at the heart of Acrew's causes of action for slander of title, quiet title, ouster, ejectment, partition, and the prior unlawful detainer action and attorney fees do not need to be apportioned between related causes of action. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1035–36. The Court finds that the fees, in fact, should not be apportioned between these causes of action as there was not work done on these causes of action separate and apart from what needed to be done in regards to the slander of title cause of action. Work related to the breach of fiduciary duty, accounting, and Section 17200 claims did not implicate title and should not be awarded in damages.

"However, upon further review f [*sic*] the case law and general jurisprudence, the Court concludes that *Seeley* held a plaintiff was entitled to recover fees reasonably necessary to remove the cloud on the title but not those 'incurred merely in pursuit of damages against . . . defendants' or 'in negotiations with third parties over sale or lease of the property.' *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 865–866. Once counsel

12

has succeeded in clearing title, which in this case was accomplished in principle at the time of the settlement agreement entered into on June 18, 2013, the ability to recover attorney fees is cut off. Prior to that date, it is impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units given how interrelated the causes of action for slander of title, quiet title, ouster, ejectment, and partition are and how they all center upon the documents that clouded title. *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.

"After the date of the settlement, it unfortunately took some number of months for title to actually be cleared and the Court awards $5,000 as a reasonable fee for the work that needed to be done post-settlement in order to actually effectuate the settlement.

"The Court recognizes and appreciates the substantial exercise of billing judgment performed by counsel for Acrew, as well as the thought put into proper and appropriate delegation of tasks as reflected in the Declaration of Jing Cherng, setting forth the request for $136,487.63 it requests as damages in the form of fees related to this action subsequent to the unlawful detainer action.

"Subtracting from the $136,487.63 the fees expended after settlement and giving credit for $5,000 for fees related to the settlement after June 18, 2013, the Court awards $92,054 in fees as damages incurred after the unlawful detainer action.

"**JUDGMENT**

"On the cause of action of Slander of Title, the Court previously found for Acrew and against both Post Apple and Abraham Farag. The Court now finds that Acrew is entitled to a total of One Hundred Fifty Six Thousand Four Hundred and Thirteen Dollars ($156,413) in damages as against Post Apple and Abraham Farag."

Post Apple and Farag filed a timely appeal from the judgment.

## DISCUSSION

### Post Apple's and Farag's Appeal Has No Merit:
### Judge Petrou's Decision is Fully Supported

Plaintiffs' brief is separated into two parts: Part I, entitled "Slander of Title," asserts claims of error as to the slander of title decision; Part II, entitled "Attorneys' Fees," asserts claims of error in the damages awarded. We address them in turn.

Before doing so, we begin with the observation that plaintiffs' brief essentially ignores all of Farag's misdeeds—indeed, essentially ignores Farag himself, who as plaintiffs described him below, had done "hundreds of purchase and sale transactions and bid at many foreclosure sales." Plaintiffs' brief also ignores numerous facts relied on by Judge Petrou, including that the LSNDA contained false statements; that Post Apple was not the lender on the entire note; that A and R's supposed right to purchase the property was false; that the April 21, 2011 signature date was false; that the lease memorandum was false; and that Post Apple and Farag knew that members of the public might act in reliance on the statements.

Plaintiffs' first argument is that slander of title "was legally impossible against Post Apple, LLC, as it was a joint owner of the property." The argument fails, both procedurally and substantively.

Procedurally, the argument fails because it was not made below. There was no pleading indicating that Post Apple has taken any position that slander of title was "legally impossible." So, no such issue was before Judge Petrou, no issue that Acrew had to be prepared to address with appropriate evidence. Similarly, after trial Post Apple did not raise the argument in its opposition to Acrew's proposed statement of decision, or even allude to it in its own statement of decision. Post Apple is foreclosed from asserting it here.

The leading California appellate treatise describes the rule this way:

"[8:229] **New Theories Not Reviewable on Appeal:** As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule

14

is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal; and it also reflects principles of estoppel and waiver ([¶] 8:244 ff.).  [¶] . . . [¶]

"(2) [8:231]  **New theory of defense:**  Likewise, a defendant-appellant cannot assert a new theory of defense (nonliability) for the first time on appeal."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶¶ 8:229, 8:231, p. 8-167 to 8-168; accord, *Giraldo v. Department of Corrections and Rehabilitation* (2008) 168 Cal.App.4th 231, 251.)  But even assuming Post Apple were not foreclosed from making the argument, it has no merit.

To begin with, plaintiffs cite to no case that supports their position, citing only to several cases that do talk of "land of another," all in the context where the slander of title was to the land of another.

Many other cases set out the elements of a slander of title claim without requiring that the property involved be that of another, but rather another's "interest" in the property.  *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999 (*Sumner Hill*) is illustrative.  There, in a scholarly, comprehensive discussion of the law, Justice Kane began as follows:  "Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof ' "some special pecuniary loss or damage." '  [Citation.]  The elements of the tort are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss. [Citations.]  If the publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title. [Citation.]"  (*Sumner Hill, supra*, 205 Cal.App.4th at p. 1030.)  So, it is another's interest in land, not another's land.

Our discussion in *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 858 (*Seeley*), describing the Supreme Court case of *Gudger v. Manton* (1943) 21 Cal.2d 537, makes the point:  "[*Gudger v. Manton*] . . . supports our conclusion that a recorded document may have no effect on title yet still give rise to a slander of title cause of action.  There,

15

defendant obtained a judgment against plaintiff's wife and recorded a writ of execution upon all the interest *she* had in a certain property belonging to plaintiff. The property was entirely plaintiff's separate property and thus the writ had no effect on plaintiff's title. In plaintiff's suit for slander of title the California Supreme Court rejected the notion that a legal cloud must be created in order to give rise to the action. 'The essence of the matter is that there has been an actionable dispargement of title if the plaintiff has been proximately damaged thereby . . . . If the matter is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title where it is so understood by the recipient. (Rest., Torts, § 629.)' " (190 Cal.App.3d at pp. 858–859.)

To the same effect, see *Appel v. Burman* (1984) 159 Cal.App.3d. 1209, 1214: " 'One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.' " Likewise Witkin, who states the law this way: "Slander of title is a false and unprivileged disparagement, oral or written, of the title to real or personal property, resulting in actual pecuniary damage. [Citations.] ¶ The statement is disparaging if it throws any doubt on the ownership of the property. The disparagement may occur not only by complete denial of the title, but also by claim of some interest in it. Thus, filing or recording a document that appears to claim an interest or to cast doubt on the title may furnish the basis for an action. [Citations.]" (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 642, p. 947.)

Plaintiffs next argue that "Slander of title was legally impossible because of the Dumas Lease attornment provision prevented the foreclosure from extinguishing the lease." This argument, too, is foreclosed by the "theory of trial" rule, as no such position was asserted below, no claim or defense of "impossibility." The argument also fails on the merits.

16

To begin with, the argument ignores the numerous false statements recorded by Farag, including that the nonsubordination agreement falsely stated that A and R had an option to purchase the property, and also represented to the public that Post Apple owned the entire note not to mention had a false, backdated signature. The argument also fails as it is based on claimed facts that are unsupported. There is simply no evidence before us that supports plaintiffs' assertion that Acrew failed to object to plaintiffs' actions, or that checks were introduced for the purpose of showing that A and R paid rent, or any evidence showing that this rent was "accepted."

Plaintiffs' third argument, set forth in three short paragraphs in less than a page, contends that "Acrew's purchase of the Property after the LSNDA and Lease Memorandum were recorded shows there were no damages to the Property caused by these documents, and without damages, Acrew's slander of title claim fails." *Sumner Hill* is dispositive. There, as here, appellants argued that "the pecuniary damage element of the [slander of title] . . . is only satisfied by evidence of actual loss to salability of the property, and that expenditure of attorney fees and costs *by themselves* are insufficient." (205 Cal.App.4th at p. 1029.) And "in order for attorney fees and costs to be recoverable as damages in a slander of title cause of action, there must *also* be pecuniary damage to the salability of the property itself." (*Id*. at p. 1031.) The Court of Appeal rejected the contention, concluding as follows, "We do not agree that a plaintiff must always show specific harm to vendibility, such as through proof of a lost sale or diminished value. Rather, we hold that at least in cases such as this one where title was disparaged in a *recorded* instrument, attorney fees and costs necessary to clear title or remove the doubt cast on it by defendant's falsehood are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title." (*Ibid*.)

Plaintiffs' fourth slander of title argument contends that Farag could not be liable individually because he was "protected by the corporate shield available to members of limited liability companies." Hardly.

Plaintiffs acknowledge Farag could be liable; as they put it: "A limited liability member can be personally liable for his own tortious acts. *People v. Pacific Landmark*

(2005) 129 Cal.App.4th 1203 1216 (no individual liability for '[w]rongs committed by the company merely because of their status as managers, but may be personally liable for their participation in those wrongs.')." And indeed he was. Judge Petrou found Farag liable because he committed the tortious conduct that resulted in the slander of title: he signed the Lease Memorandum; he signed the LSNDA; and he made the decisions to sign and record the documents. And then he lied about it. In sum, Farag personally participated in the tortious conduct at issue here. In Acrew's words, he was "the mastermind behind the wrongful acts that gave rise to this dispute."

Moreover, Farag's contention that he is not personally liable is wholly inconsistent with his position taken below, in the third motion in limine—his successful motion—where he prevailed by arguing that an alter ego theory of liability would be redundant. His argument was that "Acrew has alleged that Farag has committed acts in his own right that would make him liable to Acrew. Adding another theory of liability is unnecessary."

Our comments in *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1468, are apt: "Judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, ' " prevents a party from 'asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.' " ' (*Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 490–491 (*Daar & Newman*).) The dual purposes for applying this doctrine are ' " 'to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.' " ' (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.) Judicial estoppel 'is intended to prevent litigants from " ' " 'playing "fast and loose with the courts." ' ' " ' [Citation.]" [Citation.] It is an " 'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.' " ' (*Daar & Newman, supra*, at pp. 490–491.)"

In sum, plaintiffs attack on Judge Petrou's slander of title decision has no merit. Likewise their attack on damages.

18

As noted, Judge Petrou awarded as damages three items: (1) $5,000 incurred in connection with enforcing the settlement; (2) $64,360, representing a portion of the fees incurred during the unlawful detainer case; and (3) $92,054 in fees in the action before her, including the $5,000 to enforce the settlement agreement, but excluding all other fees incurred post-settlement.

Part II of plaintiffs' brief is entitled "Attorneys' Fees," and raises issues about three specific components of the amount awarded by Judge Petrou, describing the issues with these questions: "(1) Were attorneys' fees awarded after the settlement impermissible? (2) Were attorneys' fees wrongly awarded for causes of action other than slander of title? (3) Was the Trial Court authorized to award attorneys' fees for the separate unlawful detainer action?" We answer all three questions adversely to plaintiffs.

Damages recoverable in a slander of title action include "(1) the expense of legal proceedings necessary to remove the doubt cast by the disparagement, (2) financial loss resulting from the impairment of vendibility of the property, and (3) general damages for the time and inconvenience suffered by plaintiff in removing the doubt cast upon his property." (*Seeley, supra*, 190 Cal.App.3d at p. 865.) In fact, *Sumner Hill* held that "where title was disparaged in a *recorded* instrument, attorney fees and costs necessary to clear title or remove the doubt cast on it by defendant's falsehood are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title." (*Sumner Hill*, *supra*, 205 Cal.App.4th at p. 1031.)

We thus look to the legal proceedings here, which were two: (1) the unlawful detainer case—the highly contested, scorched-earth defended, unlawful detainer case dismissed because Farag swore falsely under oath; and (2) the action, which generated an seven-page register of actions. And it was for those litigations that Acrew sought damages. Judge Petrou thoughtfully analyzed Acrew's request, specifically noted "the extensive evidentiary record," and found Acrew's request to reflect "substantial exercise of billing judgment." In sum, Judge Petrou undertook a detailed analysis of Acrew's papers, and made factual findings supporting her award of damages to Acrew. That award was correct.

Turning first to the unlawful detainer case, we begin by noting that plaintiffs concede that fees in that case could be properly recoverable, but argue they should not be because the action was dismissed. As plaintiffs put it, "Yes, Acrew could have proven title in the unlawful detainer action under Code of Civil Procedure § 1161a(b), and attorneys' fees and costs incurred in clearing title in a slander of title action are recoverable as damages. [Citation.] [¶] But Acrew did not prove title. It dismissed the unlawful detainer. Had Acrew prosecuted the unlawful detainer to a successful conclusion in which it proved its title, then it would have a legitimate claim to recovering its fees in that separate action because those fees would have been incurred in clearing title. . .[¶] . . . [¶] There is no legitimate reason why Post Apple (and Mr. Farag who was not even a party to the unlawful detainer) should be required to pay for Acrew's abandoned litigation strategy." This is a most simplistic—and less than candid—description of the unlawful detainer case.

In 2011 Acrew filed the unlawful detainer action against A and R as the tenant, which action included Post Apple as an involuntary plaintiff. It was hardly a run of the mill unlawful detainer action, to be disposed of quickly and efficiently.

To the contrary, it was pled under Code of Civil Procedure section 1061a, which made title an issue. And it quickly became much more complicated—and expensive. After Acrew filed the unlawful detainer complaint, Post Apple filed two motions to strike and two demurrers. After Acrew successfully dealt with those motions, Post Apple then answered and asserted numerous affirmative defenses based upon the Nonsubordination Agreement. Post Apple also alleged that Acrew lacked title to the property. Acrew propounded discovery to Post Apple and A and R, seeking the basis in their assertions that A and R had a valid claim of possession to the property. A and R failed to respond, necessitating a motion to compel.

In addition, there were several appearances for trial and settlement conferences, including the first trial date, which turned into an impromptu settlement conference. This led to two more days in court while the parties attempted to settle the dispute. They did not. And then came Post Apple and A and R's motion for summary judgment. There, as

20

Judge Petrou expressly found, Farag swore to false facts because they created a different legal effect—and led to the unlawful detainer action being dismissed. In her words: "Effectively these recorded documents, if truthful, allowed significant potential defenses to the unlawful detainer and increased the cost of litigation increased [*sic*]. The unlawful detainer litigation was replaced with this action, all of the claims which were designed to eliminate the false documents and their legal effect."

Judge Petrou found that the action was a continuation of the same dispute that drove the unlawful detainer. She also found that the unlawful detainer issues were inextricably intertwined with the slander of title issues and could not be apportioned. "Inextricably intertwined" disposes of plaintiffs' argument as to the fees awarded here, as held in many cases.

*Sumner Hill* is one, a slander of title action. There, the Court of Appeal affirmed a jury instruction that said attorney fees necessary to clear title are recoverable as damages; that attorney fees were not recoverable in other causes of action; " 'However, attorney's fees and litigation costs need not be apportioned when incurred for representation on an issue common to both a cause of action for which attorney's fees and costs are awardable and for which they are not allowed. [¶] If you find that non-fee claims are inextricably interrelated with fee claims, you may award attorney's fees and costs incurred in connection with those inextricably related claims.' " (*Sumner Hill*, 205 Cal.App.4th at p. 1035.)

Numerous other cases make the point, where courts have affirmed attorney fee awards where the claims were so "intertwined as to make it impracticable, if not impossible, to separate the attorneys' time." *Maxim Crane Works, L.P. v. Tilbury Constructors* (2012) 208 Cal.App.4th 286 is illustrative (*Maxim*). *Maxim* arose when a construction worker sued Maxim, a crane company, for personal injuries arising from a worksite incident. Maxim filed a cross-complaint against the injured worker's employer, Tilbury, seeking indemnity. The cross-complaint failed, as the trial court enforced an unfavorable choice-of-law provision in the contract written by Maxim, and found the indemnity agreement inapplicable to the employee's claim. The trial court thereafter

21

awarded Tilbury its full attorney fees, accepting "Tilbury's contention that defense against Maxim's indemnity cross-complaint was 'inextricably intertwined' with Tilbury's defense against Gorski's tort suit. . . ." (*Id*. at p. 297.) The Court of Appeal affirmed.

After beginning with the observation its scope of review was "narrow," *Maxim* then concluded with this:

"The California Supreme Court has stated that, 'Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130; see *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111.)

"Further, 'Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.' (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687; see *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 ['Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.'].)" (*Maxim, supra*, 208 Cal.App.4th at p. 298.) As Judge Petrou found here, the facts were "inextricably intertwined."

Finally, plaintiffs attack the $5,000 awarded by Judge Petrou for the expense involved in enforcing the settlement agreement. To no avail.

The settlement was signed in June, 2013. Acrew was compelled to bring a motion to enforce it, which Post Apple and Farag opposed. The motion was ultimately granted in September 2013. Despite this, title was not cleared until December 2013. In short, Acrew's title remained clouded from June until December. The expended $5,000 to enforce the settlement was properly awarded.

### Acrew's Appeal Has No Merit: It Was Not Entitled to Attorney Fees

Following the judgment in its favor, Acrew filed a "Motion to Determine Prevailing Party and for Attorney's Fees." The motion was made under Civil Code

section 1717,[2] on the claimed grounds "that Acrew is entitled to fees against Post Apple under the lease it invoked as a defense, and had Post Apple prevailed, Acrew would have been liable for its fees under that same document." The motion sought "an additional $76,978.63 in fees."

Post Apple and Farag filed opposition, Acrew a reply, and the motion came on for hearing on October 22, 2014, prior to which Judge Petrou had issued a tentative ruling against Acrew. Acrew contested that ruling, and Judge Petrou heard argument. She then filed her order denying Acrew attorney fees, an order that well explained the basis for her holding. It read as follows: "Acrew's fee request is based on a lease between Daniel Dumas and Annabelle Constantin, as lessors, and A and R Laundries LLC as lessee. Although Acrew was not a signatory to that lease, it argues that it is nevertheless entitled to attorneys' fees under the lease, because Post Apple would have been entitled to fees against Acrew if Post Apple had prevailed in this case. The Court does not understand why Post Apple would have been entitled to any attorneys fees against Acrew based on the lease if Post Apple had prevailed in this case. Post Apple has asserted in this case that it was a party to the lease and/or assignee of the lessors' rights under the lease. But Acrew does not demonstrate that Post Apple ever asserted—at any time before it filed its opposition to this Motion—that Acrew was a party to the lease, or a third party beneficiary of the lease, or that Acrew would be liable for Post Apple's attorneys' fees pursuant to the lease if Post Apple had prevailed against Acrew. A nonsignatory claiming entitlement to attorneys' fees pursuant to a contract to which it is not a party must show that the signatory party actually would have been entitled to receive attorneys' fees if it has been the prevailing party. (See Leach v. Home Savings & Loan Assn. (1986) 185 Cal.App.3d 1295, 1307.) Acrew fails to make that showing."

As noted, Acrew appealed from the order denying it fees, an appeal that asserts three arguments: (1) the action was "on a contract"; (2) the attorney fees clause in the

---

[2]Actually, the motion stated it was made under "Code of Civil Procedure §§ 1717, 1032, and 1033.5." The first citation is obviously an error, and the other two sections were not even mentioned in the memorandum.

lease is broadly written and applies to torts, including slander of title; and (3) Acrew is entitled to attorney's fees because had Post Apple prevailed, Acrew would have been "found to be either a party to the lease or a [*sic*]."[3] None of the arguments has merit.

" 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation . . . is left to the agreement, express or implied, of the parties . . . .' " (Code Civ. Proc., § 1021.) This section is the California version of the "American rule," under which each party must pay its own legal fees. (*Trope v. Katz* (1995) 11 Cal.4th 274, 278–279.)

The issue is whether there is some agreement that changes the American rule. And in answering that issue, the court's "analysis begins and ends with the language of the attorney fee clause on which [defendants] rely. [Citations.]" (*People ex rel. Dept. of Corporations v. Speedee Oil Change Systems, Inc.* (2007) 147 Cal.App.4th 424, 429.) The Supreme Court has synthesized the applicable principles—there, in the context of "prevailing party"—this way: " ' "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations]." [Citation.]" ' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.) As the Civil Code succinctly puts it, "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

Judge Petrou's responsibility was to apply the language of the attorney fee provision to the proceeding before her, to determine if the proceeding was within the language. And in doing so, she was—and we are—governed by one more principle: the

---

[3]A fourth argument is that Acrew was a prevailing party, an issue not really in dispute.

24

*"[s]cope of [the] [p]rovision [is] [s]trictly [c]onstrued."* (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 168, p. 712.)

The attorney fee provision in the lease provides in applicable part as follows: "If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights thereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorney's fees . . . . The term 'Prevailing Party' shall include, without limitations, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense." That provision does not support attorney fees to Acrew here.

First, Acrew was not within the terms of the attorney fee provision. The provision begins: "If any Party or Broker brings an action. . . ." The lease defines who the 'Parties' to it are, using a capitalized 'Party' or 'Parties' wherever the lease refers to the specific parties of the lease (Trial Exhibit #3, ¶1.1, at 014), indicating it is being used as a defined term, i.e., a 'Party' must be the Broker or a party to the lease. Beyond the broker, there were only three such parties: the two landlords and the tenant, A and R. Not Acrew.

Second, Acrew's motion was based on Civil Code section 1717, which provides in pertinent part as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Acrew asserts in point blank fashion that the action was "on the contract," going on to assert the claimed reason why: Post Apple's "only defense involved the Dumas lease, which contained a broad contractual fee-shifting clause." Passing over Acrew's unsupported claim that the provision was "broad," its case was not "on the contract."

25

The case was for slander of title, a tort. (*Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 84.) As to this, what the Court of Appeal held in *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698—a case, not incidentally, that included an action to declare rights under a lease (p. 710)—is apt: "Civil Code section 1717 does not apply to tort claims; it determines which party, if any, is entitled to attorneys' fees on a *contract claim only*. As to tort claims, the question of whether to award attorneys' fees turns on the language of the contractual attorneys' fee provision, i.e., whether the party seeking fees has 'prevailed' within the meaning of the provision and whether the type of claim is within the scope of the provision. This distinction between contract and tort claims flows from the fact that a tort claim is not 'on a contract' and is therefore outside the ambit of section 1717." (64 Cal.App.4th at p. 708, internal citations omitted.)

Maybe Post Apple's defense implicated the Dumas lease. Maybe not. But even if it did, it is of no consequence. Numerous cases have upheld denial of attorney fees to nonsignatories in cases where agreements were in some way implicated. Three examples are:

*CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc*. (2008) 160 Cal.App.4th 288, where attorney fees had been awarded to successful defendants in a case involving misappropriation of trademarks and patents. The Court of Appeal reversed. After rejecting defendants' arguments based on an indemnification clause in an agreement between the parties, the court concluded as follows: "Defendants assert they are entitled to attorney fees under the attorney fees clauses of several other agreements. They are mistaken in each case. None of the defendants is a party to those agreements, and in two cases neither is CytoDyn. The mere mention of an agreement in a complaint does not mean, as defendants seem to believe, that the lawsuit has been brought to enforce those agreements. Moreover, even if defendants were parties to the agreements, the attorney fees clauses in most instances do not cover this lawsuit." (*Id*. at p. 301.)

*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541: Fees denied to nonsignatory real estate broker in the successful defense of fraud action arising from real

26

estate transactions, even though the underlying contract between the buyer and the seller contained a broad fee clause.

*Clar v. Cacciola* (1987) 193 Cal.App.3d 1032: Action between holders of competing deeds of trust, both of which contained attorney fee clauses; fees denied to prevailing defendant under either deed, based on the complete lack of privity between the competing trustees as to the fee clauses.

Acrew last asserts, however cursorily, that had Post Apple prevailed, Acrew would have been liable for attorney fees. Judge Petrou said she did "not understand" the claim. Neither do we. Simply, Acrew failed below, and fails here, to demonstrate how Acrew would have been entitled to recover fees under the lease if Post Apple had prevailed on the slander of title cause of action.[4]

## DISPOSITION

The judgment in favor of Acrew is affirmed, as is the order denying Acrew attorney fees. Each side shall bear its respective costs on appeal.

---

[4] Acrew's brief notes that Post Apple prayed for attorney fees. This does not mean that the opposing party is entitled to fees, as many cases have held. (See, for example, *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 616–617; and *Sessions Payroll Management, Inc. v. Noble Construction. Co.* (2000) 84 Cal.App.4th 671, 681–82.)

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


A142859 & A143832; *Post Apple LLC et al. v. Acrew Management LLC et al.*